Department of Medicine and Care Mr. Hran Good morning, Your Honor. My name is Michael Hran, and I represent Pauline Prickett. The first issue I'd like to address today, Your Honor, is the question of whether the VA actually afforded Mrs. Prickett a post-victim's claims assistance act adjudication. And the answer to that is no, Your Honor. There's an October 2002 Board of Veterans Appeals decision and a November 2003 Board of Veterans Appeals decision. And the language, the express language used in both decisions expressly states that the board concludes that the discussion within the rating decision, statement of the case, supplemental statement of the case, and other correspondences gave Mrs. Prickett adequate notice of the evidence that she needed to substantiate her claims. Both DVA decisions clearly said that. Then in January 2005, Your Honor, the VA filed a brief with the lower court, and they argued for affirmance of the November 2003 board decision, saying that the court correctly aggregated non-veterans claims assistance act notices. In April 2006, this court issued Mayfield's case, and in Mayfield, the court held that the VA may not aggregate non-veterans claims assistance act notices to support a conclusion that the secretary provided adequate VCA notice. Counsel, can I interrupt one second? Yes, Your Honor. This is a VCA notice case, and if we do agree with you that it has to be vacated and remanded because the statement of the case, for example, can't constitute initial adjudication or re-adjudication in Mayfield, what difference is this really going to make to your client? I'm just wondering why this is appealed in her case. Do you really believe that there's a chance on re-adjudication they're going to change their mind about whether or not her husband's heart disease was connected to his service? Well, Your Honor, I can't. It would be speculation for me to say that it would, but I can tell you, Your Honor, that just from personal experience, that many cases that have been remanded under this court, back to the Court of Veterans' Appeals and back to the agency, where the agency added and said that there's no way the claimant would receive their benefits actually did. Cases like Collaro and Maggett and other cases have actually received benefits on remand. One of the benefits of having a remand from this court or the lower court back to the agency is that many times, especially when PVA has the attorneys representing them, is that PVA continues to represent them down below, and the attorney helps the claimant develop the case. And that would happen in this particular case unless Mr. Hubbard, the prior counsel, would like to take over. Do you think there's more evidence that wasn't submitted about service connection or something? Is that what you're suggesting? Do you think there might be something? I believe that it's possible to develop for that, yes, Your Honor, that depending on the case and the evidence that's there, it might be possible to get a medical opinion, give Mrs. Prickett, who's an aged woman, she's probably 75 years old, give her a chance to develop the case. When the case, in fact, was before the agency, she was represented by a layperson who worked for a veterans' service organization. And they denied her claim back in 1999. So a lot has changed since 1999. Perhaps with some assistance of counsel, she might be able to develop the case and prevail on her claim. I can't say, but she does need the opportunity to have a chance to do that. And part of that would be remanding the case, Your Honors, so that the VA could actually accord her with a Post-Veterans Claims Assistance Act notice and an adjudication notice. Why isn't this, even using your argument, just applying the law of Mayfield to the facts, and therefore something we have no jurisdiction over? Well, Your Honor, in this particular case, the VA is on record as saying that the Board of Veterans Appeals would aggregate non-veterans' claims assistance act notices to support the conclusion that the VA accorded VCA notice. In Mayfield, this Court said that was unlawful. So a remand would be necessary, Your Honor, for the agency itself to articulate reasons why it believes, if it does, and no one knows if it does, whether the May 2001 letter alone provided Mrs. Prickett with adequate VCA notice. The Mayfield Court also held that part of the VA's responsibility under the VCA in cases like this one is that after they accord a claim with an adequate VCA notice, they must adjudicate the claim. And the VA here did not do that, Your Honors. So unless the Court has any additional questions, I will reserve the rest of my time for rebuttal. Thank you. Thank you. Mr. Hoffman. May it please the Court. As our briefs, I think, demonstrate, we understand Mrs. Prickett's first issue is simply to be trying to impose a sort of judicial admission upon a brief that the agency submitted prior to this Court's decision in Mayfield, in which at that time the agency's position was simply that the satisfaction of the VCA notice requirement could be derived from various types of documents. Of course, later... Counsel, do you mind if I move you to the question that Judge Rader asked? Is it your position that you think that the argument really being raised here is just an application of Mayfield to the facts in this particular case? Is that your position? Our initial position with respect to all of the first half of Mrs. Prickett's argument is yes, that this basically raises issues outside the Court's jurisdiction. Why isn't interpretation of the statutes or regulations with regard to what an SOC is a matter within our jurisdiction? That, my answer was... Oh, yeah, sorry. I'm jumping ahead. I was just hoping to distinguish. Yes, that is the issue that I think... So your position is not what Judge Rader said with regard to the second issue. The question of whether a statement of the case can be an adjudicative decision, I think, is a question that requires the Court to review the regulations and statutes. And I think that, as we established in our brief, if the Court does review the regulations and the statutes, as some of us have reviewed recently, the only conclusion is that, of course, a statement of the case can contain an adjudication. In fact, a statement of the case always contains an adjudication. Here's my question, though. It's not really a notice. It's not a post-BCAA notice re-adjudication, right? Because what you've just done is take away the adjudication that she should have gotten after notice. Isn't it supposed to go notice, adjudication, re-adjudication, a la Mayfield? And if for us to say SOC is a re-adjudication after notice, she never actually got an initial adjudication after notice. So we've cut out one level of review that she should be entitled to, haven't we? No. I think this is one of these cases that falls within that sort of groupings of pending cases that had already received an initial adjudication. At the time Mayfield became – or not Mayfield, but the BCAA was enacted. The initial adjudication, as I recall in this case, was prior to November 2000, which was in the effective date of the BCAA. And what happened was Ms. Prickett submitted a notice of disagreement. And then prior to the record being transmitted to the board, which is done after the agency looks at the notice of disagreement and determines whether re-review or re-development or more development is necessary, and then determines whether, given those requirements, a benefit should be granted or if not, the denial should continue. And this information is given to the claimant through an issuance of a statement of the case. In this particular case, because of the timing and the effect of the statute, VA determined that cases pending before the secretary, which would include cases pending both before the regional offices and the board, even those cases that had already had an initial decision, which, according to the language of the BCAA, would have required the issuance of the notice prior to the initial decision in this court, Mayfield held as much. It was impossible in this case because the initial decision had already been issued. So what the VA did was simply issue a notice at that time, the time of the effective date of the BCAA. In this case, the notice was issued in May of 2001, so five or six months after the effective date of the BCAA. And the SOC came on the heels in August 2001. So when exactly was Ms. Prickett supposed to submit all of her evidence? You all made your decision and issued it within three months of giving her the notice that the statute says she's entitled to. I think the court has to keep in mind here that although the BCAA provides a framework by which the VA communicates with the claimant to help develop the case, that's not something new. The VA has always developed the case. There is always communications going on back and forth. And I think if we look at, for example, in the appendix, the summary of what transpired in this case, I think maybe the statement of the case itself, or in this case, the statement of the case, I believe, lists on page 800, for the record, some of the evidence that was gathered. And then on the next page, 801, again, relates to the communication events that took place in this case. So if we look down on page 801, we see that an initial decision was issued on April 3, 2000, which predated the BCAA, but that prior to that, there were statements obtained by the VA, statements from the claimant. So development took place in this case that was sufficient within the minds of the VA decision makers to make a determination. Now, what happens is after the BCAA gets issued, VA says, well, we realize that these kinds of cases, which were already the subject of initial decisions, even though they've already been fully developed, and in many cases we will say that Section 5103A has these procedures, these procedures were followed in many regional offices. It was part of – the history of the BCAA can go back to a case called Morton for the Veterans Court, in which the same type of requirements were listed in what's called the VA Claims Manual. And the Veterans Court in Morton essentially held that the VA Claims Manual, not being a regulation, could not form the basis upon which the court could determine whether the VA was complying with its notice requirements. The outcome of all this, of course, is essentially the codification of many of these guidelines in the form of the BCAA. So again, the VA has been developing – that's what the VA does. That's why it's always referred to as the non-adversarial process. I understand all of that, but the statute came along in 2000, and the BCAA notice requirement was implemented. Obviously, there is a belief or a requirement now that you have to have very specific kinds of notice. Otherwise, the claimant is at a disadvantage in the system. And so she did not have that notice at the time the initial decision you want me to rely upon was made. So why should that initial decision qualify as an imposed BCAA initial decision? She's supposed to get two bites of the apple at BCAA. With all respect, we're not asking the court to rely upon the April 2000 initial decision. You are, because you're wanting me to call the SOC the re-adjudication we called for in Mayfield. Well, it is an adjudication. But is it a re-adjudication? She's supposed to get two bites of the apple. That's kind of the way I read it. No, what Mayfield suggests is that for those cases like this case, in which it was impossible to issue the notice prior to the initial adjudication because at the time of the enactment of the BCAA, the initial adjudication had already been issued, or saying it differently, there was no BCAA at the time of the initial adjudication, so there could have been no statutory requirement to issue a 5103A notice. For those types of cases, the VA did this on its own through its implementing regulation 3.159, determined that, OK, even though the initial adjudication in that case had already been issued predated the BCAA, we're going to go out and issue a new BCAA notice in those cases, which it did in this case on May 29, 2001. And what Mayfield instructs is that subsequent to that notice, there needs to be another adjudication. And we maintain that in this case, the statement of the case, which is here at the record we've been looking at on page 800 and on, is that adjudication. It re-reviews the claim. It takes into account the fact that the BCAA notice has been provided. It takes into account any of the evidence or information that was gathered and provided either by the VA or by Ms. Cricket to the VA subsequent to the issuance of the notice. And so it's not that you get two bites at the apple. It just may seem that way given the fact that this, like Mayfield, was one of those cases that was pending but had already received its initial adjudication at the time of the BCAA. So the re-adjudication, I think the important part about the re-adjudication term is that there be an adjudication taking into account anything that occurred subsequent to the issuance of the notice, which this case has, the notice being in May 2001 and this document being in, I believe, January 2002. August 2000. Well, August 2002. Three months later. It appears that there were several submissions after the notice prior to the statement of the case, but including one for her, I guess, and the VA seems to have obtained some materials. It doesn't specify why. But suppose that upon receiving the statement of the case, she had continued to feel that this didn't reflect a complete account of the records that were necessary and useful to flesh out her case. What options, undergraduations, would be appropriate? Well, the history of how the initial adjudication, the initial decision, I should say, the statement of the case, what comes in between those two documents is that notice of disagreement, which we referred to earlier and was filed in this case. Then that requires, under 19.26 and 19.29, the agency to take another look at the claim and determine whether or not an additional review or additional development. Give me the date of the notice of disagreement. Is this the May 26, 2000 notice of disagreement that we're talking about now? Yes. So essentially what's happened here, and the regulations at 38 CFR Part 19 sort of set this out in sequential detail, is after the initial decision, the veteran claimant then submits a notice of disagreement if he or she is not in agreement with the decision. That then requires the VA to go back, re-review, re-develop if necessary, and then issue, well, it has the choice in 19.26, and it's also spelled out in 38 U.S.C. 7105. It can, after that development and review is complete, grant the benefit, which is clearly an adjudication. Alternatively, if it decides that the benefit has not, despite this additional review that may have been warranted by the notice of disagreement, the benefit is not substantiated, then it issues a statement of the case, continuing the denial of the claim, and setting forth in very specific details as 7105, Title 38, and 19.29 CFR 38 provide, the evidence review, the issues, the reasons, the decisions, and the reasons and basis for the decisions. And then what happens is the appellant has a prescribed period of time by which the appellant determines whether they will continue to appeal the case. As the NOD is Part 1 of their notice to the VA that they're upset with the decision, then Part 2 comes after the statement of the case, and that's often referred to as the VA Form 19 for its equivalent. Right. But suppose that she wants to take the third route, which is to say, I don't yet want to go to the BVA, but I do want another shot at you, R.O., and submits additional material at that point. That's allowed. The regulation is a supplemental statement of the case. That could lead to a supplemental statement of the case. Many things could lead to a supplemental statement of the case, including a remand from the board back to the regional office. But among those things, yes, Your Honor, submission of additional evidence subsequent to the receipt of the statement of the case would require the agency to review that evidence. And as long as the record hasn't been transmitted to the board, then we're back to essentially going through the statement of the case procedures, only it's now called a supplemental statement of the case. And is there anything in the materials that were sent to her in August of 2001 that spells out that option? Submit further material saying, well, you still haven't done it right. I believe in the standard portion of the statement. The document itself – oh, I'm sorry. This document here, when she submitted her notice of discrimination, she also requested a hearing. So in this particular case – and this is also another avenue to be able to – when they file a notice of discrimination, they can request a hearing. They can have that hearing sometime before the regional office, if they desire, or they can later have a hearing before the board. In this case, she requested a hearing as part of one of her statements that she submitted. And that's what led to the February 2002 letter and supplemental statement of the case? It may very well have, Your Honor. And that, I take it, is a further adjudication of this claim after the statement of the case? Does that – your position is that we can't listen to additional re-adjudications? Oh, yes. So you're telling us that she had three adjudications, right? The initial one, the re-adjudication that necessarily must occur according to regulations between the SOC and another re-adjudication that would occur between the SOC and SSOC. This is the essence of the non-adversarial process. And, you know, many times we stand before the court and we have to entertain arguments that something that happens before the Veterans Court, which is non-adversarial, should be – which is adversarial, should be non-adversarial. This is an example of how communication between the veteran claimant and the claimant when the claim is before the secretary is non-adversarial. The veteran claimant has multiple opportunities to respond to various decisions made by the secretary. And so in this case, for example – not in this case, but hypothetically – after issuing the decision of the statement of the case or the supplemental statement of the case and then transmitting the record to the board, the regulations provide the veteran with yet another opportunity to provide new evidence at that time. And they're not relevant here, but the regulations spell out what happens, whether the board takes that evidence and looks at it in the first instance, depending upon whether the claimant waives right to remand to the regional office, or whether it just goes back. And so that's the idea. And, you know, the suggestion that these documents like the supplemental statement of the case or the statement of the case are not adjudications is – I mean, it's just nothing, you know, that it's not consistent with what the VA has always understood to be the purpose behind these documents, as we stated in our brief, consistent with the statute, the regulations, and the VA's understanding. Thank you, Mr. Hoffman. Your argument was helpful. Mr. Duran. Yes, Your Honor. One point I want to make, Your Honor, is that the government just argued before this court that a statement of the case is an adjudication. However, that's not what the government argued in their brief. In the government's brief, the government argued that this court should affirm the Court of Veterans' Appeals because the lower court found that a decision review officer had issued a review decision in the statement of the case of August 2001. So the government's arguments here are all post hoc arguments. Judge Murray, you're entirely correct. Apparently now under Mayfield and Prickett, everything that the VA issues is an adjudication. Statements of the case, notice letters, supplemental statements of the case. But significantly, they didn't turn in the VA adjudication, so that's what this court issued in Mayfield in April 2006. Just yesterday, this court heard argued in the Mayfield case, and yesterday the argument was that a January 2002 supplemental statement case would be an adjudication. Now today the argument is an August 2000 statement of the case is an adjudication. And in the government's brief, the argument was that the DRO issued an adjudication in the statement of the case. But there couldn't be a DRO decision, Your Honors, because the VA issued a decision review officer regulation in May 2001 and set an NOD date of June 1, 2001 as a date for a decision review officer. Mrs. Prickett didn't file her notice of disagreement. She filed it in May of 2000. Therefore, the VA did not accord her a decision review officer decision. And so I respectfully submit, Your Honor, that all the arguments about the post hoc, I'm sorry, the non-adversarial nature of the VA is completely irrelevant here because whether the VA is non-adversarial, the government should be permitted to make it up as it goes along. In January 2005, the government's brief said that the VA aggregated non-VCA notice documents. There was no mention about a DRO decision, no mention about a post hoc, I'm sorry, a post-VCA notice adjudication. Statements of case have never been adjudications, nor could they be. Under 7105, the statement of the case is the VA's explanation for a decision after the claimant files a notice of disagreement. The cover letter to the statement of the case that Mrs. Prickett got said it's a statement of the case. And in the government's brief in Mrs. Prickett's case, they cite N21 provisions as giving the VA authority to issue DRO decisions in statements of the case and supplemental statements of the case. So if statements of the case and supplemental statements of the case could be adjudications, there would be no need at all for an N21 provision authorizing a statement of the case or a supplemental statement of the case to announce a DRO decision. In conclusion, Your Honor, unless there's any questions, I respectfully submit that the court should reverse the lower court arraignment so that Mrs. Prickett can receive a post-VCA notice adjudication decision. Thank you. Thank you, Mr. Moran.